```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

CHERISE CASTEL,

                Plaintiff,

vs.                                    Case No.  2:12-cv-581-FtM-29UAM

CITY OF NAPLES and ROBERT MCGREGOR,
in his individual capacity,

                Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. #27) filed on September 20, 2013.  Plaintiff filed a Memorandum of Law in Opposition (Doc. #34) on October 18, 2013.  At issue herein are Count I for battery against the City of Naples and Count V for excessive force under 42 U.S.C. § 1983 against Robert McGregor in his individual capacity.  (See generally Complaint, Doc. #2.)  Summary judgment as to Counts II, III, and IV was granted by separate Order entered contemporaneously to this Opinion and Order.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us,

Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

**II.**

The generally undisputed facts are as follows: On or about July 29, 2010, defendant Robert Andrew McGregor (McGregor or defendant) responded to a Naples Police Department dispatch relay for a welfare check on plaintiff Cherise Castel (Castel or plaintiff). (Doc. #34-3, Exh. B[1], McGregor Dep. 5:4; 5:23-6:1; 8:11-13, July 15, 2013.) Dispatch had received a call from plaintiff's sister Claire, who lives in France, indicating concern for plaintiff's welfare. (McGregor Dep. 5:18-23; Doc. #34-1,

---

[1]For consistency, the Court will cite to the depositions presented by plaintiff with the Response (Doc. #34), where available, including plaintiff's Exhibit letters even though they appear to be out of order or inconsistent with the list in the Response (Doc. #34, p. 2).

Castel Dep. 24:2-8, Aug. 8, 2013.) McGregor arrived at the scene, at the same time as non-defendant Sergeant Sheridan (Sheridan)(collectively the officers), with the information from dispatch. (McGregor Dep. 6:13-14; 10:9-13; 11:5-17.) Upon arrival, McGregor and Sheridan spoke to plaintiff's grandmother, Frances Albergo. The grandmother stated she was concerned because Castel had previously attempted to commit suicide by slitting her wrists. (McGregor Dep. 11:25-12:5; Doc. #34-2, Exh. D, Albergo Dep. 7:24-8:1; 9:2-3, July 9, 2013.) The officers asked the grandmother's permission to go in and speak to Castel, and the grandmother let them enter the apartment. (McGregor Dep. 12:24-13:1, 9-11; 14:1-3; Doc. #34-2, Exh. D, Albergo Dep. 9:2-3.) Castel's bedroom was found to be unlocked. (McGregor Dep. 15:12-20; Doc. #34-4, Exh. C, Sheridan Dep. 31:3-6, July 17, 2013.) It is undisputed that Castel did not know why the police were present. When the officers first walked in, Castel was in bed, possibly under her covers. (McGregor Dep. 21:20-21; Sheridan Dep. 7:23-25, 32:22-23; Castel Dep. 28:2-6.)

At some point, the officers told Castel about the information relayed to them by her sister and grandmother with regard to slitting her wrists. (McGregor Dep. 16:21-24; 22:16-25; Sheridan Dep. 7:22-24; 31:18-25.) The officers saw at least one mark on her wrist and Castel explained that she tried to use a rock to cut her wrists. (McGregor Dep. 16:25-17:5, 17:21-24; Sheridan Dep. 9:2,

11:15, 31:12-15; Castel Dep. 32:17-18; 33:2-3.)  Castel denied being suicidal.  (McGregor Dep. 24:5-8; Sheridan Dep. 35:24-25; Castel Dep. 33:15-17.)  Castel admits that she used profanities in response to their presence, and the officers testified to the same.

When Castel refused to go to the David Lawrence Center voluntarily, McGregor testified that the officers advised her that they would take her involuntarily.  (McGregor Dep., 21:10-13; Castel Dep. 40:14-16.)  The officers asked her to get off the bed where she was laying to be escorted out to the car.  The grandmother was not in the room.  (McGregor Dep. 18:10-11, 21:20-25.)  The officers stated that Castel became defensive, but they had no reason to believe that Castel would be violent.  (McGregor Dep. 23:7-24:4, 9-12; Sheridan Dep. 11:20-23; 12:3-4.)  When Castel refused to go voluntarily and walk out to the patrol vehicle, they decided to carry her out.  (Sheridan Dep. 12:21-23; Castel Dep. 30:17-19.)

McGregor testified that Sergeant Sheridan grabbed Castel, put her down, and then McGregor came from behind to put the handcuffs on her, one arm at a time behind her back.  Castel testified that the officers stated their intention to handcuff her if she did not go voluntarily.  (McGregor Dep. 24:14-21; Castel Dep. 40:14-16.)  At the time, McGregor was 6'1" and 250 pounds, and Sheridan was 5'7" or 5'8" and around 230 pounds.  Castel was 5'6" or 5'7", and 115-120 pounds.  (McGregor Dep. 25:23-26:21; see also Albergo Dep.

11:17-12:1.) Castel was carried outside the apartment to a van in the parking lot. (McGregor Dep. 26:8-9; Castel Dep. 42:12-15.)

The officers were both holding Castel, who was actively trying not to go into the van by placing her foot on the edges of the van, and Sheridan, who was holding her feet, had to put Castel's feet down so she would be standing and he could go unlock the back door of the patrol vehicle. (McGregor Dep. 31:6-8; Sheridan Dep. 14:12-21; Castel Dep. 41:10-14. 43:21-23.) Castel denied that her feet ever touched the ground because she was grabbed and swung to the floor. (Castel Dep. 42:23-25.) Sheridan went around to the driver's side to unlock the doors, and when he turned around he saw Castel on the ground, face first, with McGregor kneeling next to her. (McGregor Dep. 31:18-19; Sheridan Dep. 14:19-22; 15:17-19.) Sheridan did not witness how she was taken to the ground. (Sheridan Dep. 25:18-23.)

Once Sheridan saw that Castel was bleeding, EMS and another officer, Don Ross (Ross) were called to the scene. (McGregor Dep. 36:4-7; Sheridan Dep. 16:1-3, 13-14.) Both arrived within minutes. (McGregor Dep. 36:23-37:10; Sheridan Dep. 17:1-13.) McGregor sought medical attention once Ross arrived on the scene and took his place next to Castel. (McGregor Dep. 36:6-12; Sheridan Dep. 18:3-5; 19:20-25.) Ross found McGregor kneeling beside Castel with his hand on her back. (Doc. #27-11, Exh. K, ¶ 6.) Castel was taken to the emergency room and examined by Dr. Alberto De La

Rivaherrera. (Doc. #27-6, Exh. F.) What happened after Castel hit the ground, but before she was transported to the hospital, is detailed below.

### III.

Plaintiff alleges a violation of her Fourth Amendment and Fourteenth Amendment rights by McGregor under Section 1983 and battery by the City of Naples, because McGregor was acting in the course and scope of his employment as an officer with the City of Naples Police Department[2], stemming from her involuntary commitment under the Baker Act.[3] Plaintiff argues that the only relevant facts that need to be considered are what happened once they were outside the apartment and at the van (patrol vehicle). (Doc. #34, pp. 2-3.) The alleged excessive force is the stomping of plaintiff while on the ground by McGregor, and continuing battery against

---

[2]Sheridan is not named as a defendant in this case, nor are his alleged actions the basis for the claim of battery against the City of Naples. Therefore the allegations with regard to kicking plaintiff's bare feet were not considered as part of either Count I or Count V.

[3]Plaintiff was taken into custody pursuant to The Florida's Mental Heath Act, commonly referred to as the Baker Act (hereinafter "Baker Act" or "Act"), which is found at Fla. Stat. § 394.451, *et. seq*. Under the Baker Act, "[i]t is the policy of [Florida] that the use of restraint and seclusion on clients is justified only as an emergency safety measure to be used in response to imminent danger to the client or others." Fla. Stat. § 394.453. An involuntary commitment for examination under the Baker Act may be initiated by law enforcement officer who shall take a person who appears to meet the criteria for involuntary examination into custody and deliver them to the nearest receiving facility for examination. Fla. Stat. § 394.463(2)(a)1.

plaintiff while she was handcuffed and on the ground. (Doc. #2, ¶¶ 13-14.)

To establish a claim under § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived each plaintiff of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Plaintiffs also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc).

A battery occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the other;" or, "[i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). The element of actually and intentionally touching is satisfied by any intentional physical contact, no matter how slight. Johnson v. United States, 559 U.S. 133, 138 (2010)(citing State v. Hearns, 961 So. 2d 211, 218 (Fla. 2007). Intent is determined by the circumstances surrounding the touching or striking of the victim. S.D. v. State, 882 So. 2d 447, 448 (Fla. 4th DCA 2004)(citations omitted).

**IV.**

Castel testified during her deposition that, once outside and at the van, she turned her head to call out to her grandmother, and when McGregor grabbed her jaw to move her head back, she bit his

hand. (Castel Dep. 41:14-17; McGregor Dep. 31:23-32:1.) Castel bit McGregor hard but his finger was released and not still in her mouth when she went down. (Castel Dep. 51:20-24.) When McGregor felt the pressure on his finger, he testified that he took her down to the ground causing his finger to release from her mouth when she went down, face first. (McGregor Dep. 32:21-25; 33:5-9.)

Castel testified that McGregor grabbed Castel from behind, turned her around and slammed or "smushed" her face first onto concrete once saying "How's that", and that McGregor then put his foot on the back of Castel's head, with pressure so that her face was going into the concrete and then lifted his foot again to put pressure on her head. (Castel Dep. 41:18-25, 52:8-10; 53:23-54:4.) When the grandmother went outside, she saw a foot on Castel's head and a big puddle of blood. (Albergo Dep. 13:21-24.) Castel's grandmother testified that she saw Castel's head "in the concrete" and a large foot of a policeman on her head, but no movement of the foot. (Doc. #34-2, Exh. D, Albergo Dep. 13:6-11, July 9, 2013.) Castel testified that McGregor also came down low next to Castel to place his elbow to the back of Castel's neck to keep it down while somebody kicked the bottom of her feet. (Castel Dep. 42:1-5.)

McGregor denied placing his foot on Castel's head. (Doc. #27-15, Exh. O, ¶ 11.) McGregor agreed that to do so once Castel was down on the ground would have been excessive. (McGregor Dep. 33:20-22; 34:9-19.) Ross did not at any time see McGregor's foot

on Castel. (Doc. #27-11, Exh. K, ¶ 11.) Sheridan agreed that if McGregor placed his foot on Castel's head after she received facial lacerations and while still on the ground, which he did not witness, it would have been "inappropriate". (Sheridan Dep. 37:7-14.)

A medical examiner for Collier County, Marta Coburn, testified as an expert in forensic pathology that the injuries to the front of Castel's face could be caused by any forceful impact of the face to the ground. Dr. Coburn further testified that she would have expected more lateral injuries rather than just the midline ones if there were more blows or repeated blows to the head, but that McGregor's foot being on Castel's head after her face hit the ground could not be ruled out. (Doc. #34-5, Exh. H, Coburn Dep. 7:6-9; 7:23-8:11; 13:11-19, July 17, 2013.) Dr. Manfred Borges, the Deputy Chief Medical Examiner for the District 20 Medical Examiner's Office, also testified as an expert. (Doc. #27-7, Exh. G.) Dr. Borges testified that Castel's injuries were likely from a single strike on a hard surface but that he could not exclude the possibility of multiple strikes. (Id., Borges Dep. 8:22-9:20, Aug. 8, 2013.) Dr. Borges also could not say whether something hit the back of the head or not. (Borges Dep. 11:1-3 16:18-20.) Dr. Coburn and Dr. Borges based their opinions on review of medical records but did not personally examine Ms. Castel or review photographs of the injuries.

## V.

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. "Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper." Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1162 (11th Cir. 2012).

Plaintiff's position is that McGregor placed his foot on her head and smushed or stomped down after she was on the ground. McGregor's position is that he did not place his foot on her head at all. Sheridan and Ross did not see how plaintiff ended up on the ground and neither saw a foot on plaintiff's head. Both McGregor and Sheridan agreed that, if plaintiff's version of the facts were true, the actions would have been excessive or

inappropriate. The possibility could not be ruled out by either forensic pathology expert. A genuine issue of material fact has been raised by plaintiff's verison of the events, and "even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment." <u>Strickland v. Norfolk S. Ry. Co.</u>, 692 F.3d at 1160 (citations omitted). As a result, the Court cannot reach the issue of whether McGregor is entitled to qualified immunity and summary judgment must be denied.

As detailed above, whether McGregor acted in a fit of rage or stomped on plaintiff's head are disputed facts. Therefore summary judgment must also be denied as to the state battery claim because the totality of the circumstances, i.e., what occurred, are disputed.

Accordingly, it is now

**ORDERED**:

Defendants' Motion for Summary Judgment (Doc. #27) as to Counts I and V is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   23rd   day of December, 2013.

*/s/ John E. Steele*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record